No. 25-4047

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED FARM WORKERS of AMERICA, et al.,

Plaintiffs-Appellees,

v.

KRISTI NOEM, et al.,

Defendants-Appellants.

On Appeal from an Interlocutory Order Issued by the U.S. District
Court for the Eastern District of California (Civil Action No. 1:25-cv-
00246-JLT-CDB)

DEFENDANTS-APPELLANTS' OPENING BRIEF

**BRETT A. SHUMATE**
**Assistant Attorney General**

**YAAKOV M. ROTH**
**Principal Deputy Assistant**
**Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant**
**Attorney General**

**ELIANAS PEREZ**
**Assistant Director**
**September 26, 2025**

**TIM RAMNITZ**
**Senior Litigation Counsel**
**Office of Immigration**
**Litigation**
**Civil Division**
**U.S. Department of Justice**
**P.O. Box 878**

**Civil Division**
**Ben Franklin Station**
**Washington, D.C. 20044**

**Attorneys for Apellants**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION ..................................................3

STATEMENT OF THE ISSUES ........................................................4

FACTUAL AND PROCEDURAL BACKGROUND .......................4

    I.    The Complaint and Motion for Preliminary Injunction..........4

    II.   Defendants' Steps to Comply with the PI .......................8

SUMMARY OF ARGUMENT...........................................................9

STANDARD OF REVIEW ..............................................................12

ARGUMENT .....................................................................................12

    I.    Plaintiffs Failed To Establish Standing to Seek
          Prospective Relief.................................................................13

    II.   The Intervening Steps Taken by Border Patrol Have
          Rendered Plaintiffs' Claims Moot ..............................28

    III.  At Minimum, Plaintiffs Cannot Show Irreparable
          Harm To Justify Preliminary Injunctive Relief.....................35

    IV.  The Injunction Improperly Imposes a "Follow the Law"
          Mandate.................................................................................38

    V.   8 U.S.C. § 1252(f)(1) Prohibits the Class-Wide
          Injunction..............................................................................42

CONCLUSION ..................................................................................45

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors, Inc. v. Mineta,*
  534 U.S. 103 (2001) ................................................................................ 14

*Al Otro Lado v. Exec. Office of Immigr. Rev.,*
  20 F.4th 606 (9th Cir. 2024) ................................................................ 43

*Am. Cargo Transp., Inc. v. U.S.,*
  625 F.3d 1176 (9th Cir. 2010) ............................................................ 30

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................ 41

*Brackeen v. Haaland,*
  994 F.3d 249 (5th Cir. 2021) .............................................................. 33

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ................................................................... 1, passim

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................... 13, 14, 15, 24

*Clark v. City of Lakewood,*
  259 F.3d 996 (9th Cir. 2001) .............................................................. 14

*Gonzales v. United States Immigration and Customs Enforcement,*
  974 F.3d 788 (9th Cir. 2020) .............................................................. 43

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018) .............................................................. 22

*DBSI/TRI IV Ltd. P'ship v. United States,*
  465 F.3d 1031 (9th Cir. 2006) ............................................................ 28

*District of Columbia v. Wesby,*
  583 U.S. 48 (2018) ............................................................................ 41

iii

*Garland v. Aleman Gonzalez,*
   596 U.S. 543 (2022) ................................................................ 42

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ................................................................ 41

*Hodgers-Durgin v. de la Vina,*
   199 F.3d 1037 (9th Cir. 1999) (en banc) ........................ 36, 37

*Hunt v. Wash. St. Apple Adver. Comm'n,*
   432 U.S. 333 (1977) ................................................................ 26

*LA All. for Hum. Rts. v. Cnty. of Los Angeles,*
   14 F.4th 947 (9th Cir. 2021) ................................................ 12

*Lewis v. Casey,*
   518 U.S. 343 (1996) ................................................................ 37

*Noem v. Perdomo,*
   606 U.S.__, 2025 WL 2585637 (September 8, 2025) .......... 1, 19, 20, 24

*Perdomo v. Noem,*
   148 F.4th 656 (9th Cir. 2025) ................................... 19, 25, 40

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,*
   908 F.3d 476 (9th Cir. 2018) ................................................ 32

*Rosebrock v. Mathis,*
   745 F.3d 963 (9th Cir. 2014) ................................. 27, passim

*Schmidt v. Lessard,*
   414 U.S. 473 (1974) .......................................................... 39, 40

*Smith v. Helzer,*
   95 F.4th 1207 (9th Cir. 2024) .............................................. 22

*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009) ................................................................ 27

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ................................................. 15, 26, 27

*Trump v. CASA, Inc.,*
    606 U.S. 831 (2025) ................................................ 26, 39, 42

*United States v. Brignoni-Ponce,*
    422 U.S. 884 (1975) ................................................... 33, 39

*U.S. v. Montero-Camargo,*
    208 F.3d 1122 (9th Cir. 2000) ....................................... 33

*United States v. Arvizu,*
    534 U.S. 266 (2002) ......................................................... 40

*United States v. SCRAP,*
    412 U.S. 669 (1973) ......................................................... 27

*United States v. Washington,*
    853 F.3d 946 (9th Cir. 2017) .......................................... 12

*Washington v. Trump,*
    847 F.3d 1151 (9th Cir. 2017) ........................................ 25

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ....................................... 30

*Winter v. Natural Resources Defense Council, Inc.,*
    555 U.S. 7 (2008) .................................................... 12, 35

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health,*
    654 F.3d 919 (9th Cir. 2011) .......................................... 23

## **STATUTES**

### **Immigration and Nationality Act of 1952, as amended:**

Section 236,
    8 U.S.C. § 1226....................................................................... 12, 42, 43, 44

Section 239,
    8 U.S.C. § 1229....................................................................... 12, 42, 43, 44

Section 242(f)(1),
    8 U.S.C. § 1252(f)(1)............................................................. 4, 12, 42, 43

Section 287,
    8 U.S.C. § 1357............................................................................... passim

### **Other Statutes**

28 U.S.C. § 1292(a)(1)....................................................................... 3

28 U.S.C. § 1331 ............................................................................... 3

## STATEMENT REGARDING CIRCUIT RULE 34-3

The Appellants submit that this case is entitled to priority in hearing date pursuant to Circuit Rule 34-3(3), as it involves the entry of a preliminary injunction.

## INTRODUCTION

The district court abused its discretion in issuing a sweeping, district-wide injunction to enforce the Fourth Amendment and related statutory rights because Plaintiffs lack Article III standing and failed to establish likely irreparable harm.

A straightforward application of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), forecloses the district court's past-is-prologue assertion of standing. And the Supreme Court's recent decision granting a stay in *Noem v. Perdomo*, 606 U.S.__, 2025 WL 2585637 (September 8, 2025), endorses a straightforward application of *Lyons*: Plaintiffs must show that they themselves will likely be imminently stopped in the absence of reasonable suspicion, and arrested without consideration of flight risk. Yet like in *Lyons*, Plaintiffs have no basis to believe that Border Patrol will imminently stop or arrest them again, let alone do so wrongfully.

Indeed, Plaintiffs' evidence underscores how any likelihood of future harm to them is irredeemably speculative. There is not a single instance in the record of a Plaintiff being stopped more than once by Border Patrol, nor is there even a single instance of Border Patrol visiting the same place repeatedly. And in the two months between their alleged

injuries and filing their complaint, Plaintiffs cited no further instances of stops or arrests.

Meanwhile, the district court missed the issue of prospective standing entirely. The district court's standing analysis instead proceeded like a damages claim, looking retrospectively at alleged past "violations" of Plaintiffs' constitutional and statutory rights between January 7 and January 9, 2025.

Plaintiffs cannot otherwise supply standing by alleging an official policy and, even so, Plaintiffs did not present a sufficient factual basis to leverage three days of stops and arrests into a district-wide injunction permitting ongoing supervision of all immigration stops and arrests in the Eastern District of California. And neither the involvement of an organizational plaintiff nor proceeding as a class change the standing analysis.

The intervening steps taken by Border Patrol have also rendered moot the claims underlying the injunction. Plaintiffs alleged that they were subject to unlawful stops and arrests during a three-day period. Border Patrol responded by expressly recommitting itself to consistent enforcement of constitutional and statutory protections; that gives rise to

an especially strong presumption that the conduct complained of will not recur. And Plaintiffs' recent filings with the district court confirm that Border Patrol has adhered to the guidance and training.

At minimum, even if Plaintiffs could surmount these Article III hurdles, they cannot make a sufficient showing of imminent irreparable harm to justify the extraordinary equitable remedy they secured below. And if nothing else, the district court's order is an impermissible "follow the law" injunction that threatens to chill even lawful immigration enforcement in the Eastern District of California.

For all of these reasons, this Court should vacate the preliminary injunction.

## **STATEMENT OF JURISDICTION**

The U.S. District Court for the Eastern District of California had jurisdiction over this case under 28 U.S.C. § 1331, although Defendants contest Article III standing to seek an injunction and also submit that certain claims were rendered moot. *See infra* Sections I and II. This Court has jurisdiction over this appeal from the district court's order granting a preliminary injunction under 28 U.S.C. § 1292(a)(1).

Appellants filed a timely notice of appeal from the district court's order on June 26, 2025. *See* 2-ER-126-28; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUES

I.  Whether Plaintiffs established Article III standing to obtain prospective relief.

II.  Whether intervening steps taken by the Government have rendered this case moot.

III.  Whether Plaintiffs have shown irreparable harm to warrant a preliminary injunction.

IV.  Whether the district court's injunction is an impermissible follow-the-law injunction.

V.  Whether 8 U.S.C. § 1252(f)(1) prohibits the class-wide injunction.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Complaint and Motion for Preliminary Injunction

Between January 7 and January 9, 2025, United States Border Patrol El Centro Sector conducted an operation in Kern County in south-central California. *See* Dkt. 47 at 2-3, 18-19; 1-ER-3-4, 19-20. As part of that operation, it stopped and arrested Plaintiffs Oscar Morales Cisneros, Wilder Munguia Esquivel, and Yolanda Aguilera Martinez. Dkt. 47 at 5-9; 1-ER-6-10. Morales Cisneros and Munguia Esquivel are illegal aliens

4

and were placed in removal proceedings. Dkt. 47 at 6-8, 29; 1-ER-7-9, 30. Aguilera Martinez is a lawful permanent resident and was released minutes after her arrest, once agents saw her green card. Dkt. 47 at 8-9; 1-ER-9-10.

Almost two months later, on February 26, 2025, Morales Cisneros, Munguia Esquivel, and Aguilera Martinez, along with an organizational plaintiff, United Farm Workers ("UFW"), filed a complaint in the U.S. District Court for the Eastern District of California seeking declaratory and injunctive relief.[1] Dkt. 1; 3-ER-361-431. Plaintiffs claimed that Border Patrol agents had stopped them based on their race and without reasonable suspicion, in violation of the Fourth Amendment; that Border Patrol agents had arrested them without a warrant despite a lack of flight risk, in violation of 8 U.S.C. 1357(a)(2); and that Border Patrol Agents had engaged in a pattern of such violations. Dkt. 1; 3-ER-361-461. Plaintiffs also claimed to represent two classes under Federal Rules of Civil Procedure 23(b)(2): a Suspicionless Stop Class and a Warrantless

---

[1] Two other plaintiffs, along with organizational plaintiff UFW, alleged an additional claim concerning voluntary departure not at issue here.

Arrest Class. Dkt 1; 3-ER-422-23. On March 7, 2025, Plaintiffs filed a motion for preliminary injunction. Dkt. 15; 3-ER-157-360.

On April 4, 2025, Border Patrol El Centro Sector broadcast guidance (a "Muster") to its agents. The Muster discussed traffic stops and reasonable suspicion, factors to consider when assessing flight risk, and how agents should document the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213, Record of Deportable/Inadmissible Alien ("Form I-213") as soon as practicable. *See* Dkt. 31-1; 2-ER-149-51. And Border Patrol El Centro Sector committed to training its more than 900 agents on the Muster, and on consensual encounters, within 60 days. Dkt. 31-2; 2-ER-153-55.

On April 29, 2025, the district court granted class certification and issued a preliminary injunction. Dkt. 47; 1-ER-2-89. The court found that Plaintiffs have standing, that Border Patrol's actions since the filing of the suit had not mooted the case, and that it had authority to resolve Plaintiffs' claims. Dkt. 47 at 24-36, 39-41, 76-82; 1-ER-25-37, 40-42, 77-83. It then found that Plaintiffs were likely to succeed on the merits of their claims that Border Patrol's stop and arrest practices violate the Fourth Amendment and 8 U.S.C. § 1357. Dkt. 47 at 73-76; 1-ER-74-77.

6

And Border Patrol's intent to perform more enforcement operations within the Eastern District was imminent, irreparable harm to Plaintiffs. Dkt. 47 at 83-84; 1-ER-84-85.

The district court also defined two classes:

Suspicionless Stop Class: All persons since January 6, 2025, who have been or will be subjected to a detentive stop by Border Patrol in this district without a pre-stop, individualized assessment of reasonable suspicion whether the person (1) is engaged in an offense against the United States or (2) is a noncitizen unlawfully in the United States.

Warrantless Arrest Class: All persons since January 6, 2025, who have been arrested or will be arrested in this district by Border Patrol without a warrant and without a pre-arrest, individualized assessment of probable cause that the person poses a flight risk.

1-ER-86.

The district court granted preliminary injunctive relief to both district-wide classes. Dkt. 47 at 71-73, 86-88; 1-ER-72-74, 87-89. The PI barred detentive stops in the Eastern District absent reasonable suspicion of unlawful presence and barred warrantless arrests absent probable cause that the alien was likely to escape before a warrant could be obtained. Dkt. 47 at 86; 1-ER-87. It further required agents to contemporaneously document in narrative form the particularized facts supporting each stop and arrest, including the date and time of both the

stop and the documentation, 1-ER-87-88; mandated production of that documentation to Plaintiffs' counsel every 60 days, or within seven days of a specific request, *id.* at 88; directed issuance of reasonable-suspicion guidance within 60 days, *id.* and required training of all El Centro Sector agents operating in the Eastern District of California, with rolling certification to Plaintiffs until every agent was trained on the guidance, *id.*

## II.   Defendants' Steps to Comply with the PI

On June 29, 2025, Defendants served Plaintiffs' counsel with a second Muster setting forth guidance given to Border Patrol agents concerning how they should determine whether reasonable suspicion exists when conducting detentive stops, including vehicle stops, including clarifying that refusal to answer questions cannot, without more, establish reasonable suspicion.  Dkt. 64-2; 2-ER-124-25.  On July 25, 2025, Defendants produced Border Patrol's arrest reports from an operation in Sacramento on July 17, 2025.  Dkt. 81; 2-ER-91-120.  On July 27, 2025, and August 27, 2025, Defendants produced declarations setting forth the number of agents who have been trained on the second Muster.  Dkt. 64; 2-ER-121-23.

8

## SUMMARY OF ARGUMENT

I.  The district court abused its discretion in issuing a sweeping, district-wide injunction because there is no likelihood of future injury in this case.  The Supreme Court's decision in *Lyons* forecloses Plaintiffs' past-is-prologue assertion of prospective standing.  The Supreme Court's recent stay grant in *Perdomo* further eliminates any doubt that *Lyons* controls here and mandates that Plaintiffs must show that they themselves will likely be imminently stopped and arrested again by Border Patrol, and moreover, stopped without reasonable suspicion and arrested without consideration of flight risk.  And just like in *Lyons*, Plainffs have no good basis to believe that Border Patrol will imminently again stop them, let alone wrongfully.

Plaintiffs' evidence moreover underscores how any likelihood of future harm to them is entirely speculative.  There is not a single instance in the record of a plaintiff being stopped more than once by Border Patrol, nor is there even a single instance of Border Patrol visiting the same place repeatedly, and in the two months between their alleged injuries and filing their complaint, Plaintiffs cited no further instances of stops or arrests.

9

The district court, meanwhile, missed the issue of prospective standing entirely and applied the wrong framework. The district court only looked retrospectively at past alleged "violations" of Plaintiffs' constitutional and statutory rights, without examining a sufficient likelihood that Plaintiffs will imminently suffer similar violations in the future. That might suffice for obtaining damages but is wholly insufficient to establish standing to obtain injunctive relief. Because the district did not engage in this required analysis, this Court should vacate the injunction and remand.

Alleging an official policy otherwise does not fix Plaintiffs' lack of standing and there is, in any event, no factual basis from which to claim Border Patrol has a policy of disregarding constitutional and statutory requirements for stops and arrests. Social media posts and a handful of unlawful stops and arrests isolated to a single 3-day period do not a policy make. And the standing analysis applies with no less force because of the involvement of organizational Plaintiff UFW or because Plaintiffs proceed as classes.

II. The intervening steps taken by Border Patrol have also rendered the claims subject of the PI moot. Plaintiffs alleged a 3-day

period where they were subject to unlawful stops and arrests. Border Patrol responded to this aberration with emphasized recommitment to consistent enforcement of constitutional and statutory protections and, when the Government does this, there is an especially strong presumption that the conduct complained of will not recur.

III. For the same essential reasons that Plaintiffs lack standing and because their claims are moot, Plaintiffs also cannot meet their burden of showing they are likely to suffer irreparable harm absent an injunction; *i.e.*, that they would be subject again to suspicionless stops and warrantless arrests without consideration of flight risk. Indeed, in an almost parallel case, an en banc panel of this Court reversed an injunction on irreparable harm grounds, despite assuming Article III standing.

IV. If nothing else, the district court's injunction is an impermissible "follow the law" injunction. Given that "reasonable suspicion" and "probable cause" are reasonableness standards that defy specific meaning, the district court's injunction simply prohibiting suspicionless stops and warrantless arrests without probable cause of flight risk is incompatible with Rule 65(d). And with no particularized

11

contours for either reasonable suspicion or probable cause, the district court's injunction is an unqualified weapon for Plaintiffs to chill Border Patrol's ability to effectively perform its duties.

V. Lastly, 8 U.S.C. § 1252(f)(1) prohibited the class-wide injunction. Enjoining Border Patrol's warrantless arrest authority under 8 U.S.C. § 1357 necessarily interferes with operation of covered provisions 8 U.S.C. §§ 1226 and 1229.

## STANDARD OF REVIEW

This Court reviews a preliminary injunction under three standards: "factual findings for clear error, legal conclusions de novo, and the scope of the injunction for abuse of discretion." *United States v. Washington*, 853 F.3d 946, 962 (9th Cir. 2017); *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021) ("We review de novo issues of law underlying the preliminary injunction, including questions of jurisdiction over Plaintiffs' claims").

## ARGUMENT

An injunction is an "extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish four

conditions: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. While courts must consider and balance the parties' competing claims of injury, courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (internal citations omitted).

Plaintiffs cannot establish standing for prospective injunctive relief and the district court missed the issue entirely. Intervening steps taken by Border Patrol have further rendered moot the claims underlying the PI. At minimum, Plaintiffs cannot show irreparable injury sufficient to warrant injunctive relief. And, on top of it all, the court's order is an impermissible "follow-the-law" injunction.

## I. Plaintiffs Failed To Establish Standing to Seek Prospective Relief

Plaintiffs must establish Article III standing to seek prospective injunctive relief. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013). Standing to seek an injunction against future unlawful conduct does not exist merely because Plaintiffs experienced past harm and fear its recurrence. *Lyons*, 461 U.S. at 111. Rather, Plaintiffs must show "a

sufficient likelihood that [they] will again be wronged in a similar way." *Id.* The "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis in original). Under those standards, Plaintiffs failed to establish standing here. The district court committed legal error by failing to apply those controlling standards.

**A.** Plaintiffs cannot establish standing for prospective injunctive relief and the injunction should be vacated. *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001) (A court is "obliged to examine standing sua sponte where standing has erroneously been assumed below.").

Standing is determined by the facts in existence at the time the complaint is filed. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). Plaintiffs submitted declarations from eight individuals, each alleging a single interaction with Border Patrol involving an allegedly suspicionless stop and unlawful arrest between January 7 and 9, 2025. Dkt. 15-4, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10, 15-11; 3-ER-315-57. Plaintiffs submitted another declaration, from an employee of organizational Plaintiff UFW, proffering stories she heard from four

14

others recounting their single interactions with Border Patrol between January 7 and 9, 2025. Dkt. 15-3; 3-ER-302-14. Plaintiffs also declared that they experienced "emotional stress and anxiety that . . . Border Patrol agents will seize her again." 3-ER-311; 331 (same), 345 (same), 352 (same), 357 (same).

As explained above, however, standing to obtain future injunctive relief does not exist merely because Plaintiffs experienced past harm; nor are "plaintiffs' subjective apprehensions" of recurrent injury relevant. *Lyons*, 461 U.S. at 105, 107 n.8. Only a sufficiently "concrete, particularized, and actual or imminent" injury warrants forward-looking injunctive relief, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021), and a showing of mere increased risk of harm is inadequate when the risk is speculative, *Clapper*, 568 U.S. at 410. Thus, to obtain an injunction here, Plaintiffs had to show not only that they personally were likely to be stopped or arrested in the future by Border Patrol, but also that they would likely be stopped or arrested in the unlawful manner relevant to their requested relief—*i.e.*, stopped without reasonable suspicion or arrested without consideration of flight risk. Plaintiffs' single interactions with Border Patrol, all of which occurred over the

15

same 3-day period, months before the injunction issued, establish neither.

The Supreme Court's decision in *Lyons* forecloses Plaintiffs' approach to standing. There, police officers stopped the plaintiff for a traffic violation, seized him, and placed him in a chokehold, assertedly in violation of the Fourth Amendment. 461 U.S. at 97. The Supreme Court held that, while the plaintiff could pursue a damages claim for the retrospective injury, he lacked standing for prospective relief because he had not shown that "he was likely to suffer future injury from the use of chokeholds by police officers." *Id.* at 105. There was no "immediate threat" that he would again be "choke[d] . . . without any provocation or resistance on his part." *Id.* That was so even though the Court accepted that the police department had a policy of "routinely appl[ing] chokeholds in situations where they are not threatened by the use of deadly force." *Id.* That is, it was irrelevant to standing whether the police department was generally likely to continue to employ chokeholds; what mattered was that whether the plaintiff would likely be subject to that chokehold again.

16

Plaintiffs' standing is a redux of *Lyons*. Like in *Lyons*, Plaintiffs alleged that they were the subjects of unlawful enforcement actions in the past—namely, being stopped for immigration questioning allegedly without reasonable suspicion of unlawful presence and arrested without a warrant or consideration of flight risk. Dkt. 1, 15; 3-ER-302-57, 361-431. And like in *Lyons*, Plaintiffs seek a forward-looking injunction to enjoin law enforcement from again stopping them without reasonable suspicion or arresting them without considering flight risk. But like in *Lyons*, Plaintiffs have no basis beyond speculation to believe that Border Patrol will subject *them* to suspicionless stops or unlawful arrests in the future—and certainly no basis for believing that any stop and/or arrest of the Plaintiffs is imminent. It was insufficient in *Lyons* that the police department was generally likely to continue to employ chokeholds; what mattered was whether the *plaintiff* there would likely be subject to a chokehold again. *Lyons*, 461 U.S. at 105. So too, here, it is insufficient that the district court deemed Border Patrol likely to be engaging in an unstated policy of suspicionless stops and warrantless arrests without

17

consideration of flight risk.[2]  Dkt. 47 at 54-62, 68; 1-ER-55-63, 69.  What matters is that Plaintiffs cannot show *they* will likely be again subject to a suspicionless stop and/or unlawful warrantless arrest.

Indeed, Plaintiffs' evidence underscores how any likelihood of future harm to them is irredeemably speculative.  Plaintiffs have not identified a single instance of anyone being stopped more than once by Border Patrol.  Dkt. 15-3, 15-5, 15-6, 15-7, 15-8, 15-9, 15-10, 15-11; 3-ER-302-57.  Nor is there even a single instance of Border Patrol visiting the same place repeatedly.[3]  And in the two months between their alleged injuries and filing their complaint, Plaintiffs cited no further instances of stops or arrests.  *Lyons*, 461 U.S. at 105 (noting, while discussing the lack of imminent injury, that Lyons' complaint alleged an injury from "five

---

[2] The court made these findings for the purposes of "commonality" and class certification under Fed. R. Civ. P. 23(b)(2), not standing.

[3] Two declarations cite Border Patrol's presence at a Home Depot in Bakersfield on the same day, January 7, 2025, at approximately the same time, between 11 am and 12 pm.  Dkt. 15-5, 15-10; 3-ER-319-22, 347-53.  Another declaration is vague as to the Home Depot's location, and vague as to time, but places Border Patrol at a Home Deport on January 7, 2025, while "on my way to work."  Dkt. 15-7; 3-ER-333-32.  The remaining declarations are vehicle stops on different roadways, Dkt. 15-3, 15-6, 15-8, 15-11, 3-ER-302-14, 323-28, 333-38, 354-57, and a stop at a liquor store, 15-9, 3-ER-340-46.

18

months before"). Moreover, Plaintiffs are but a handful of the 8 million or so residents within the Eastern District of California and nothing shows why these Plaintiffs (whether individuals or unnamed members of UFW) would likely be stopped again. *See* U.S. Attorney's Office for the Eastern District of California, *available at* https://www.justice.gov/usao-edca; Dkt. 15-3; 3-ER-303-04 (at time of complaint, UFW had approximately 7,000 members "throughout the country" but unstated how many in the Eastern District of California).

Plaintiffs thus lack Article III standing to seek injunctive relief: "[a]bsent a sufficient likelihood" that Plaintiffs "will again be wronged in a similar way," they are "no more entitled to an injunction than any other [individual in the District]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons*, 461 U.S. at 111.

Justice Kavanaugh recently applied *Lyons* in a materially similar case, in his concurrence in *Noem v. Perdomo*, 606 U.S. __, at *1-2 (Sept. 8, 2025). There, the Supreme Court stayed an injunction likewise based on allegations that federal agents had engaged in a pattern of detentive stops without reasonable suspicion of an immigration violation. This

19

Court had denied a stay, rejecting the Government's argument that *Lyons* foreclosed plaintiffs from establishing standing for prospective injunctive relief because they failed to show a substantial likelihood that they were likely to be stopped again. *Perdomo v. Noem*, 148 F.4th 656, 674-75 (9th Cir. 2025). This Court instead held that Plaintiffs established "a pattern of officially sanctioned" unlawful stops and this was enough to show the "alleged injury is likely to recur." *Id.* at 674.

The Government applied for a stay in the Supreme Court, leading with its standing objection. *Noem v. Perdomo*, (U.S.) Dkt. No. 25A169 (Application for a Stay). *Lyons* rejected mere reliance on a pattern or policy, the Government argued, and instead requires a realistic threat that the plaintiffs themselves will be subject to suspicionless stops or unlawful arrests in the imminent future. *Id.*

The Supreme Court granted the Government's stay application. Although, as is typical, the Court did not elaborate on why it viewed the Government as likely to succeed on the merits, Justice Kavanaugh did so in concurrence. Justice Kavanaugh concluded that "under this Court's decision in [*Lyons*], plaintiffs likely lack Article III standing to seek a broad injunction restricting immigration officers from making . . .

20

investigative stops." *Perdomo*, 606 U.S.__ at *2. The plaintiffs did not have "standing to obtain future injunctive relief . . . merely because plaintiffs experienced past harm and fear its recurrence." *Id.* They had "no good basis to believe that law enforcement will unlawfully stop them in the future . . . and certainly no good basis for believing that any stop of the plaintiffs is imminent." *Id.*

The proper application of *Lyons* is therefore the straightforward one the Government presented to the Supreme Court: that Plaintiffs must show that they themselves will likely be imminently stopped and arrested again, and moreover stopped without reasonable suspicion and arrested without warrant or an assessment of flight risk. They failed to do so.

**B.** The district court did not actually conclude otherwise. The district court instead missed prospective standing entirely. *See* Dkt. 47 at 39-41; 1-ER-40-42. The court's standing analysis instead proceeded like a damages claim, looking retrospectively at past alleged "violations" of Plaintiffs' constitutional and statutory rights between January 7 and January 9, 2025. Dkt. 47 at 41; 1-ER-42. But Plaintiffs do not seek damages; they seek injunctive relief. Dkt. 1 at 69-70; 3-ER-429-30. This

required the court to assess more than past injury and to engage in a separate standing analysis regarding whether there existed a "sufficient likelihood" that Plaintiffs will imminently suffer similar "violations" in the future. *Lyons*, 461 U.S. at 105, 109-10 (past injury "presumably afford[s] [plaintiff] standing to claim damages," but "does nothing to establish a real and immediate threat" that plaintiffs would suffer the same injury in the future); *Davidson v. Kimberly-Clark Corp.n*, 889 F.3d 956, 975 (9th Cir. 2018) (Murguia, J. concurring) ("The Supreme Court has read *Lyons* as requiring a separate standing analysis with regard to prospective injunctive relief, even where a party otherwise has standing to advance a claim.").

Because the district court did not engage in this required analysis, this Court should vacate the injunction and remand. *See Smith v. Helzer*, 95 F.4th 1207, 1213-14 (9th Cir. 2024) (a district court's order granting an injunction "will be reversed" if the court "abused its discretion[,]" which occurs "when the district court fails to employ the appropriate legal standards" or "misapprehends the law"). The district court here proceeded using an erroneous legal framework and thus abused its

discretion in improperly granting a preliminary injunction on the basis of past injury alone.[4]

    **C.**    Plaintiffs have no convincing counterargument. In defending their standing, Plaintiffs contended below that the Border Patrol has a general (albeit unstated) policy or practice of employing suspicionless stops and warrantless arrests without flight risk consideration. But that is the same argument that the Supreme Court rejected in *Lyons* itself, as the dissent in that case made clear. *See Lyons*, 461 U.S. at 105, 107 n.8, 135-36 (Marshall, J., dissenting) (criticizing Court's conclusion that a policy of unlawful conduct could not establish imminent injury). Alleging

---

[4] The district court noted that Defendants below challenged the redressability element of standing but not the injury-in-fact or fairly-traceable elements. Dkt. 47 at 41; 1-ER-42. The court held that Defendants, therefore, "concede[d]" that Plaintiffs "suffered violations" of their constitutional and statutory rights between January 7 and January 9, 2025. Dkt. 47 at 41; 1-ER-42. But there was no concession. In any case, the problem—as explained above—is not that Plaintiffs failed to show violations of their rights between January 7 and January 9, but rather that any such historical violations cannot standing alone establish Article III standing to seek a prospective injunction under *Lyons*. So even if there was a concession, it was an irrelevant one. Plus, to the extent that the court meant that Defendants waived any challenge to standing, "Article III standing is jurisdictional and can neither be waived by the parties nor ignored by the court." *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011). All of this underscores the cursory nature of the court's standing analysis.

23

an official policy does not mean these Plaintiffs will likely again be subject to it—and, "[a]bsent a sufficient likelihood" that the Plaintiffs "will again be wronged in a similar way," they are "no more entitled to an injunction than any other [person in the District]." *Noem*, 606 U.S.\_\_, *at 2 (Kavanaugh, J., concurring).

The Supreme Court reinforced this point in *Clapper*. Even though the plaintiffs there challenged a statutorily authorized surveillance program—a quintessential type of established, sanctioned program— their assertion of "an objectively reasonable likelihood that their communications will be acquired under [that program] at some point in the future . . . [wa]s too speculative to satisfy the well-established requirement that the threatened injury must be 'certainly impending.'" *Clapper*, 568 U.S. at 401; *see also Perdomo*, (U.S.) Dkt. No. 25A169 (Application for a Stay) (relying on *Clapper*). Plaintiffs thus cannot circumvent the imminent-injury requirement just by alleging a general pattern or policy of misconduct.

Even if such a maneuver were legally permissible, Plaintiffs did not present a sufficient factual basis to leverage three days of stops and arrests into a district-wide injunction permitting ongoing supervision of

24

all immigration stops and arrests in the Eastern District of California. Social media posts from Border Patrol committing to enforcement of immigration law are not in any way demonstrative of an official policy or practice of suspicionless stops and warrantless arrests without considering flight risk. Dkt. 15-2; 3-ER-189-94. Nor can a handful of unlawful stops and arrests isolated to a single 3-day period realistically support a finding of a general and ongoing pattern or practice.

The district court, again, did not actually find otherwise—at least not under the applicable burden of proof. In evaluating "commonality" and class certification, the court did find a "pattern and practice" of "detentive stops without individualized assessments of reasonable suspicion" and warrantless arrests without "an assessment of whether the individuals were likely to escape." Dkt. 47 at 57-58, 61-62, 68; 1-ER-58-59, 62-63, 69. But the court did so under a "preponderance of the evidence" standard, Dkt. 47 at 58-59, 1-ER-59-60, which is lower than the necessary "clear showing" to establish future imminent injury for an injunction, *Perdomo*, 148 F.4th at 673 (citing *Washington v. Trump*, 847

25

F.3d 1151, 1159 (9th Cir. 2017)).[5]  Regardless, under any standard, the court's determination was both legally and factually erroneous for the reasons set forth above.

**D**.    This standing analysis applies with no less force because of the involvement of organizational Platiniff UFW or because Plaintiffs proceed as classes.  Associational standing requires the organization to prove, among other things, that "its members would otherwise have standing to sue in their own right."  *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977).  Just like the individual Plaintiffs, any risk of future harm for UFW's members is speculative.

Plaintiffs' class certifications likewise do not change their lack of standing.  "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not."  *TransUnion LLC*, 594 U.S. at 431; *cf. Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (requiring that injunctions be no "broader than necessary to provide complete relief to each plaintiff *with standing to sue*") (emphasis added).  A risk of harm

---

[5] The district court repeated this finding in considering Plaintiffs' "likelihood of success on the merits," but without any acknowledgement of the "clear showing" standard and instead merely "[a]s discussed above."  Dkt. 47 at 76; 1-ER-77.

"too speculative to support Article III standing" precludes relief, whether individualized or class-based. *TransUnion*, 594 U.S. at 438. Indeed, the classes here, *see supra* at 7, are defined so broadly as to include many individuals who might never suffer an injury and would never even know there was a risk of harm. *TransUnion*, 594 U.S. at 438. It is, therefore, "difficult to see" how such never-injured class members could supply the basis for standing. *Id.*; *see also United States v. SCRAP*, 412 U.S. 669, 688-89 (1973) (plaintiff must allege "that he has been perceptibly harmed by the challenged action," "not that he can imagine circumstances in which he could be affected by agency action"). At best, the associational standing and classes would add only "statistical probabilities"—which the Supreme Court has held does not suffice for purposes of Article III. *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009).

In short, Plaintiffs cannot leverage a few isolated incidents into a district-wide injunction permitting them, and the district court, ongoing supervision of all immigration enforcement in the District. This Court should therefore vacate the injunction.

27

## II. The Intervening Steps Taken by Border Patrol Have Rendered Plaintiffs' Claims Moot

Even if Plaintiffs could establish standing to seek prospective equitable relief, the intervening steps taken by Border Patrol have rendered the relevant claims moot. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome") (internal citations omitted*); DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006) ("Standing, mootness, and ripeness are jurisdictional issues that may be raised at any time, even for the first time on appeal."). The Court should vacate the injunction on this alternative ground as well.

Plaintiffs alleged a 3-day period where they were subject to unlawful stops and arrests. Border Patrol responded by recommitting to consistent enforcement of constitutional and statutory protections.

On April 4, 2025, Border Patrol El Centro Sector issued guidance (a "Muster") and ordered training recommitting to consistent enforcement of Fourth Amendment protections and protections under 8 U.S.C. § 1357(a)(2). *See* Dkt. 31-1, 31-2; 2-ER-149-55. The Muster

28

discusses traffic stops and reasonable suspicion, factors to consider when assessing flight risk, and how agents should document the facts and circumstances surrounding a warrantless arrest in an alien's Form I-213 as soon as practicable. *See* Dkt. 31-1; 2-ER-149-51. And Border Patrol El Centro Sector committed to training its more than 900 agents on the Muster within 60 days. Dkt. 31-2; 2-ER-153-55. Moreover, following the district court's injunction, Border Patrol El Centro Sector issued a second Muster discussing factors to consider when assessing reasonable suspicion in all contexts, not just vehicle stops; that an individual's refusal to answer questions does not, by itself, constitute reasonable suspicion; and that in areas where Hispanic individuals are common, an individual's apparent Hispanic race or ethnicity is not a relevant factor for reasonable suspicion. Dkt. 64-2; 2-ER-124-25. Border Patrol El Centro again committed to training its agents on this Muster. Dkt. 64-4; 2-ER-121-23.

When the Government responds in this manner to claims of inconsistent enforcement, there is an especially strong presumption that the conduct complained of will not reoccur. *Rosebrock*, 745 F.3d at 971. Of course, "[t]he voluntary cessation of challenged conduct does not

ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Id.* Consequently, the party asserting mootness bears a heavy burden. *Id.* When that party is the government, however, it is presumed the Government acts in good faith. *Id.* And where, as here, the "Government's 'voluntary cessation' is more aptly described as reemphasizing, or recommitting to, an existing policy of consistent enforcement of longstanding regulation" or law, rather than a change in policy, this is a "distincti[ve]" context where the presumption of good faith "is at an apex," as concerns regarding recurrence present in other contexts are "not present." *Rosebrock*, 745 F.3d at 973 (citing *Am. Cargo Transp., Inc. v. U.S.*, 625 F.3d 1176, 1180 (9th Cir. 2010); *White v. Lee*, 227 F.3d 1214, 1244 (9th Cir. 2000)). "Consequently, when the Government has "recommit[ted] to a preexisting policy in favor of consistent[] enforce[ment]," where the presumption of good faith is "especially strong," the Government can meet its "heavy burden" of mootness without having to satisfy "procedural safeguards" against recurrence or "the ease of changing course." *Id.* at 974 (internal citations omitted).

30

Border Patrol's response to Plaintiffs' claims is on all fours with the Court's conclusions in *Rosebrock*. Plaintiffs alleged that Border Patrol agents subjected them to suspicionless stops and warrantless arrests without consideration of flight risk. Dkt. 1; 3-ER-361-431. Border Patrol El Centro Sector in turn issued Musters broadcasting to its agents the law applicable to assessing reasonable suspicion and for assessing flight risk under 8 U.S.C. § 1357(a)(2), as well as the need to document the reasons for these stops and arrests as soon as practicable. Dkt. 31-2, 64-2; 2-ER-124-25, 149-51. Border Patrol El Centro Sector also undertook training its approximately 900 agents on the Musters. Dkt. 31-2, 64-2; 2-ER-121-23, 153-55. These actions are not new policies. Dkt. 64-2; 2-ER-122-23 (Declaration of Eduardo Cantu stating Border Patrol agent trainees are provided over 100 hours of legal instruction at the United States Border Patrol academy, which includes training on stops under the Fourth Amendment and warrantless arrests under 8 U.S.C. § 1357(a)(2)). They represent Border Patrol's commitment to correct any "inconsistent enforcement" and to "be more vigilant in following a previously existing policy of consistent enforcement" of the laws of this circuit. *Rosebrock,* 745 F.3d at 973-74 (internal citation omitted). And

31

because the presumption of good faith is "especially strong" in this distinct type of voluntary cessation, the Government can meet its "heavy burden" of mootness without having to satisfy "procedural safeguards" against recurrence or "the ease of changing course." *Id.* at 974.

To be sure, in *Rosebrock* the Court "nonetheless" analyzed five factors applicable to mootness in other contexts to assess whether the voluntary cessation was "procedurally protected" from recurrence. 745 F.3d at 972-74. But this was not essential to its holding, as ultimately the Court concluded by reiterating the "especially strong" presumption of good faith applicable in cases where the Government is "recommitting to consistent enforcement of its own longstanding regulations" or laws, rather than changing policy, and how mootness in this context does not require a demonstration of procedural safeguards against recurrence. *Id.* at 974.

In any event, those five mootness factors cut the same way here. First, the Musters are "broad in scope and unequivocal in tone." *Id.* at 972. The Musters broadly apply to all El Centro Border Patrol agents subject to the complaint, and states that Border Patrol agents "should" document the facts of an arrest as soon as practicable, *see Regents of the*

*Univ. of California v. DHS*, 908 F.3d 476, 502 (9th Cir. 2018) (the term "'should' is fully capable of expressing obligation or necessity") (citing *Garner's Dictionary of Legal Usage* (3d ed. 2011)), *rev'd in part, vacated in part sub nom. Regents*, 591 U.S. 1); *Brackeen v. Haaland*, 994 F.3d 249, 430-31 (5th Cir. 2021) ("the term 'should' often 'create[s] mandatory standards"') (quoting *Garner's Dictionary of Legal Usage* (3d ed. 2011)).

Second, the Musters "fully address all the objectionable measures that the Government officials too against the plaintiffs." *Rosebrock*, 745 F.3d at 972. Plaintiffs alleged that between January 7 and 9, 2025, Border Patrol agents stopped them without reasonable suspicion of an immigration violation and then arrested them without assessing flight risk. 3-ER-361-461. The Musters fully address these alleged violations. The June 2025 Muster states that in order to briefly detain a person an agent must have reasonable suspicion, based on specific articulable facts, that the person "is, was, or is about to be, engaged in a violation of a law the [agent] has the authority to enforce." 2-ER-124. The June 2025 Muster then recites factors from caselaw (*Brignoni-Ponce*, 422 U.S. at 884-85) for agents to consider when developing reasonable suspicion, including the Court's caselaw (*U.S. v. Montero-Camargo*, 208 F.3d 1122,

33

1132 (9th Cir. 2000)). 2-ER-124-25. The June 2025 Muster further states that it applies to "all investigative detentions," including roving patrols. 2-ER-124. The April 2025 Muster, meanwhile, states that agents must have probable cause that an individual is likely to escape before executing a warrantless arrest under 8 U.S.C. § 1357 and likewise cites factors to consider. 2-ER-149-50.

Third, it is undisputed that Plaintiffs' suit "was the catalyst for [Border Patrol's] recommitment to strict enforcement" of the reasonable suspicion and probable cause requirements. *Rosebrock*, 745 F.3d at 974.

Fourth, Border Patrol's recommitment to strict enforcement "has been in place for a long time." *Rosebrock*, 745 F.3d at 972. To be sure, in *Rosebrock*, the agency's recommitment to consistent enforcement had been in place more than three years at the time of the Court's decision and, here, Border Patrol issued its first Muster in April 2025. *Id.* at 974. But this does not cut against Defendants because, like *Rosebrock*, this intervening step was taken relatively immediately after the alleged violations. *Id.* at 969.

And like *Rosebrock*, since the intervening steps were taken, Border Patrol has "not engaged in conduct similar to that challenged by the

34

plaintiffs"—the fifth factor. *Id.* at 974. Plaintiffs' recent filings with the district court show that Border Patrol has adhered to the guidance and training. Dkt. 81; 2-ER-100-03, 111-15. In particular, Plaintiffs acknowledge that all recent stop and arrest reports document the factors the agent relied upon for reasonable suspicion of an immigration violation and for flight risk. Dkt. 81; 2-ER-100-03, 111-15.

Accordingly, the intervening steps taken by Border Patrol have rendered Plaintiffs' claims subject of the PI moot.

## III. At Minimum, Plaintiffs Cannot Show Irreparable Harm To Justify Preliminary Injunctive Relief

Even assuming that Plaintiffs had Article III standing and that their claims were not technically mooted by the subsequent Border Patrol actions, they at least failed to show a sufficient likelihood of imminent irreparable injury to warrant a preliminary injunction. This Court should therefore vacate the injunction even if it concludes that the case is justiciable as a matter of Article III.

Plaintiffs must establish that they are "*likely*" to suffer irreparable injury in the absence of an injunction. *Winter*, 555 U.S. at 22 (emphasis added). A "mere possibility" of irreparable harm is insufficient. *Id*. "Issuing a preliminary injunction based only a possibility of irreparable

harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

Here, the district court found that Border Patrol's "practice" of stopping individuals without reasonable suspicion, and its intent "to perform additional operations in the Eastern District of California," established that Plaintiffs would be imminently, irreparably subject to suspicionless stops. Dkt. 47 at 83; 1-ER-84. But Plaintiffs have not established a likelihood that they will be stopped again by Border Patrol, let alone stopped again without any suspicion of an immigration violation, and the likelihood has fallen even lower given Border Patrol's actions since filing of this suit. *See supra* Sections I and II. Consequently, Plaintiffs cannot meet their burden of showing they would be imminently, irreparably subject to suspicionless stops in the future.

Indeed, in an almost parallel case, an en banc panel of this Court reversed an injunction on irreparable harm grounds, despite assuming Article III standing and rejecting the Government's reliance on *Lyons*. In *Hodgers-Durgin v. de la Vina*, plaintiffs challenged Border Patrol practices allegedly in violation of the Fourth Amendment. 199 F.3d 1037,

36

1039 (9th Cir. 1999) (en banc). The en banc Court held that, even assuming the plaintiffs had standing, they still "have not demonstrated a sufficient likelihood of injury to warrant equitable relief" because they were "stopped only once." *Id.* at 1044. So too here. There is not a single instance in the record of an individual being stopped more than once by Border Patrol. 3-ER-302-57. Consequently, "[i]n the absence of a likelihood of injury to the named plaintiffs, there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch." *Hodgers-Durgin*, 199 F.3d at 1044; *see also Lewis v. Casey*, 518 U.S. 343, 359 (1996) ("These two [injuries] were a patently inadequate basis for a conclusion of systemwide violation and imposition of systemwide relief").

In concluding otherwise, the district court relied heavily on a social media post from Chief Patrol Agent for the El Centro Sector, stating: "Undocumented means just that. I recommend returning to the country of origin, obtaining proper documents, and doing it the right way. If not, we will arrest." Dkt. 47 at 84; 1-ER-85. On its face, however, the quoted statement says nothing about any policy or intent by Border Patrol "not

. . . to comply with the requirements to perform flight risk assessments for probable cause in the forthcoming operations. . . ." Dkt. 47 at 84; 1-ER-85. The district court's contrary interpretation is strained, at best. It cannot remotely support the sweeping injunction that the district court granted.

In short, Plaintiffs have not established a sufficient likelihood that they will be unlawfully stopped or arrested again by Border Patrol, and the likelihood has fallen even lower given Border Patrol's actions since filing of this suit. *See* Sections I and II. Consequently, Plaintiffs cannot meet their burden of showing they would be imminently, irreparably subject to unlawful warrantless arrests in the future.

## IV. The Injunction Improperly Imposes a "Follow the Law" Mandate

All else aside, the injunction is an impermissibly vague "follow the law" injunction. Federal Rule of Civil Procedure 65(d)(1) requires that any injunction be "specific in terms" and "describe in reasonable detail—and not by reference to the complaint or other document—the act or acts sought to be restrained." "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive

38

orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). And this limitation prevents federal courts from arrogating to themselves the power to generally superintend the Executive Branch's execution of the laws. *See CASA*, 606 U.S. at 858 ("[T]he Judiciary does not have unbridled authority to enforce" the Executive's "duty to follow the law.").

The district court enjoined Defendants from "conducting detentive stops in this District unless, pre-stop, the detaining agent has reasonable suspicion that the person to be stopped is a noncitizen who is present in the United States in violation of U.S. immigration law, as required by the Fourth Amendment of the United States Constitution." Dkt. 47 at 86; 1-ER-87. The district court's injunction is impermissibly vague because it simply restates the constitutional requirement of reasonable suspicion. There is no further explanation specifying what Defendants are prohibited from doing.

Reasonable suspicion is a fact-specific, context-dependent, noncategorical totality-of-the-circumstances inquiry with endless variants, including a particular officer's experience. *United States v.*

*Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975); *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Given that "reasonable suspicion" lacks any specific meaning, an injunction simply prohibiting stops without reasonable suspicion is incompatible with Rule 65(d). It enjoins conduct on such an abstract level of generality that it is impossible for Border Patrol agents to anticipate when their conduct may give rise to a violation of the injunction. *Schmidt*, 414 U.S. at 476. In *Perdomo* this Court suggested that an order which "simply restates the constitutional requirement of reasonable suspicion . . . could be an impermissible follow-the-law injunction." 148 F.3d at 680. There, however, the injunction satisfied Rule 65(d) because the order went on to specify particular factors that the defendants could not rely upon to form reasonable suspicion. *Id.* Here, on the other hand, is just what the Court warned would violate Rule 65(d)—an injunction simply restating the requirement of reasonable suspicion.

It is no different for the next paragraph of the district court's order enjoining Defendants "from effecting warrantless arrests in this District unless, pre-arrest, the arresting agent has probable cause to believe that the noncitizen being arrests is likely to escape before a warrant can be

40

obtained, as required by 8 U.S.C. § 1357(a)(2)." Dkt. 47 at 86; 1-ER-87. This is merely a restatement of the statutory requirements without any further explanation specifying what Defendants are prohibited from doing. And probable cause is likewise a fact-specific, totality-of-the-circumstances inquiry—a "fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018).

With no particularized contours for either reasonable suspicion or probable cause, the district court's injunction is an unqualified weapon for Plaintiffs to chill Border Patrol's ability to effectively perform its duties. *Cf. Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs risk nothing by alleging each stop or arrest violates the injunction, insulated by the vagueness of what constitutes reasonable suspicion, but Defendants will always be held to account. The injunction in effect sanctions keeping Border Patrol entangled in constant litigation, disrupting operations, deterring recruitment, and chilling the ardor of current agents. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).

Indeed, this is exactly what has happened. Since the injunction issued on April 29, 2025, Border Patrol has only stopped and arrested

41

individuals in the Eastern District on one occasion, July 17, 2025, yet Plaintiffs have already moved to challenge these stops and arrests as violative of the injunction. Dkt. 81-1 at 11; 2-ER-101. Plaintiffs allege that, despite Border Patrol documenting its reasons for suspecting the individual stopped of unlawful presence, and documenting its reasons for believing the individual was a flight risk—that is, despite Border Patrol's *compliance* with the injunction—Border Patrol supposedly falsified its documentation and compliance. *See* Dkt. 81-1, 7-9, 17-18; 2-ER-103-05, 111-15.

This incident exemplifies how easily this injunction, due to its vast and vague scope allowing Plaintiffs to monitor each and every immigration stop by Border Patrol, can be abused, and why this sort of open-ended follow-the-law judicial monitoring is prohibited. *CASA*, 606 U.S. at 858 (2025).

## V. 8 U.S.C. § 1252(f)(1) Prohibits the Class-Wide Injunction

Section 1252(f)(1) eliminates any court's (other than the Supreme Court's) authority to issue orders "enjoin[ing]" or restrain[ing]" implementation of 8 U.S.C. §§ 1221-1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549 (2022). The reference to both enjoin and restrain

42

indicate that a court may not impose coercive relief that "interfere[s] with the Government's efforts to operate" the covered provisions in a particular way. *Id.* at 551. 8 U.S.C. § 1226, a covered provision, provides for the apprehension and detention of aliens, and another covered provision, 8 U.S.C. § 1229, provides for the initiation of removal proceedings. Enjoining Border Patrol's warrantless arrest authority under 8 U.S.C. § 1357 necessarily interferes with operation of sections 1226 and 1229.

The district court rejected this argument, stating that 8 U.S.C. § 1357 is not amongst the provisions covered by section 1252(f)(1) and otherwise "collateral effects" on a covered provision are insufficient. Dkt. 47 at 33-37; 1-ER-34-35. Defendants recognize that this reasoning is consistent with the Court's precedent, *Gonzalez v. United States Immigration and Customs Enforcement*, 974 F.3d 788, 813-14 (9th Cir. 2020), and *Al Otro Lado v. Exec. Office of Immigr. Rev.*, 120 F.4th 606, 627 (9th Cir. 2024), and in fact the district court relied on these decisions. Defendants disagree with these decisions, however, and maintain that 1252(f)(1)'s applicability instead turns on which provision the defendant

43

is "operat[ing]," here, 8 U.S.C. §§ 1226 and 1229. Defendants raise this

issue only to preserve it for potential further review.

## **CONCLUSION**

For the foregoing reasons, this Court should reverse the district court's April 29, 2025 injunction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant
Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

ELIANAS PEREZ
Assistant Director

/s/ Tim Ramnitz
TIM RAMNITZ
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of
Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
T: (202) 616-2686
F: (202) 305-2509
tim.ramnitz@usdoj.gov

Dated: September 26, 2025        Attorneys for Respondent

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 9,491 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010, Century Schoolbook, 14-point type.

<u>/s/ Tim Ramnitz</u>
TIM RAMNITZ
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
T: (202) 616-2686
F: (202) 305-2509
tim.ramnitz@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 26, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

<u>/s/ Tim Ramnitz</u>
TIM RAMNITZ
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of
Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
T: (202) 616-2686
F: (202) 305-2509
tim.ramnitz@usdoj.gov