No. 25-4047

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED FARM WORKERS OF AMERICA, *et al.*,

Plaintiffs - Appellees,

v.

KRISTI NOEM, *et al.*,

Defendants - Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

## *AMICUS CURIAE* BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLANTS

JONATHON P. HAUENSCHILD
MATT A. CRAPO
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 232-5590
jhauenschild@fairus.org
mcrapo@fairus.org

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: October 3, 2025          Respectfully submitted,

/s/ Jonathon P. Hauenschild

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

INTEREST OF AMICUS CURIAE .......................................................................1

SUMMARY OF THE ARGUMENT .....................................................................2

ARGUMENT .........................................................................................................3

    I.    The district court erred by determining Plaintiffs have standing because they sufficiently fear future arrest .................................................................3

    II.   The district court's order will have the effect of improperly chilling Defendants' lawful immigration enforcement activities ................................7

CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Wright*,
  468 U.S. 737 (1984) ................................................................................9

*B.K. v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ....................................................................4

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...................................................................................4

*Gonzalez v. United States Immigr. & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) ....................................................................4

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ........................................................... 4, 6, 9

*Noem v. Perdomo*,
  2025 U.S. LEXIS 2779 (2025) ..................................................................8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................................................3

*Zepeda v. United States Immigration & Naturalization Service*,
  753 F.2d 719 (9th Cir. 1983) ....................................................................6

## INTEREST OF AMICUS CURIAE[1]

*Amicus curiae* Amicus curiae Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. In short, FAIR seeks to protect all Americans against the substantial harms of mass migration by attaining strongly-enforced, patriotic immigration reform. To that end, FAIR has been involved in more 100 legal cases since 1980, either as a party or as *amicus curiae*, in which it has consistently defended American interests against illegal immigration into the United States.

The decision in this case will likely have a substantial impact on the tools available to the executive branch of the federal government in dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. Amicus FAIR has direct and vital interests in

---

[1] Counsel(s) for Defendant consented to the filing of this brief. Counsel(s) for Plaintiff indicated that they do not oppose it. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

defending the executive branch's authority to address the current illegal alien crisis.

## SUMMARY OF THE ARGUMENT

The district court erred when it determined that the Plaintiffs-Appellees (hereafter "Plaintiffs") satisfied standing requirements by citing to the risk that they may be arrested at some time in the future. *E.g.* Order Granting Class Certification and Preliminary Injunction, ER at 41-42, 73-77 (presuming a causal connection between Plaintiffs' alleged injuries and Defendants' actions and that past conduct is indicative of future conduct). Even assuming Plaintiffs were harmed by improper arrests in the past, those past harms alone are insufficient to establish standing to seek injunctive relief. All Plaintiffs must demonstrate an imminent and substantial risk of future harm in order to qualify for such relief. Here, the Defendants-Appellants (hereafter "Defendants") have issued guidance and established a training program to address the allegations of unlawful actions raised by Plaintiffs, though the district court dismissed the training as not addressing the alleged misconduct. Order, ER at 79-83. The Defendants' new guidance and training greatly diminishes the likelihood of Plaintiffs being stopped or arrested unlawfully in the future.

Finally, judicial supervision of executive duties implicates separation of powers principles, and the district court's order that Defendants report to it *and*

Plaintiffs' counsel even minute details about every encounter between immigration officials and suspected illegal aliens is doubly unwarranted and will inevitably chill lawful immigration enforcement efforts. Because Plaintiffs cannot show the requisite injury for standing or injunctive relief and because the district court's order unnecessarily burdens immigration enforcement efforts, the Court should reverse and vacate the injunction.

## ARGUMENT

**I.  The district court erred by determining Plaintiffs have standing because they sufficiently fear future arrest**

The district court erred by determining that Plaintiffs demonstrated sufficient fear of future harm. Just because Plaintiffs encountered—or alleged they encountered—federal immigration officials in the past does not mean they are likely to encounter them in the future. To establish standing to seek injunctive relief, a plaintiff must demonstrate "a risk of future harm" that "is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

The standing requirement applies to representatives of a putative class, too. "[C]lass representatives must have Article III standing," and it is "the named plaintiffs' burden—as it would be any other plaintiff's—to support each standing

3

element in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *B.K. v. Snyder*, 922 F.3d 957, 966-67 (9th Cir. 2019) (quotation omitted); *see also id.* at 967 ("[W]hen we measure a plaintiff's standing, regardless of whether the plaintiff sues individually or as class representative, we look concretely at the facts that pertain to that plaintiff."); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). The district court thus erred when determining that Plaintiffs both possessed standing to seek prospective injunctive relief and could represent a class.

"[A] past injury does not provide standing to seek prospective injunctive relief 'absent a sufficient likelihood that the plaintiff will again be wronged in a similar way.'" *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 803 (9th Cir. 2020) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)) (internal alterations omitted). In *Lyons*, the plaintiff was seized by police officers and subjected to a "chokehold," which caused a loss of consciousness and damage to the plaintiff's larynx. 461 U.S. at 97-98. Lyons sought an injunction barring the police department from using chokeholds. The Supreme Court held that Lyons "presumably" had standing to seek damages against the officers and the

4

City of Los Angeles, but that in the absence of a realistic threat of future injury Lyons could not "demonstrate a case or controversy with the City that would justify the equitable relief sought." *Id.* at 105.

Here, Plaintiffs allege, and the district court accepted, that they were each stopped with "no lawful basis for reasonable suspicion" that they were unlawfully in the country. Order, ER 60-63. Plaintiffs further allege, and the district court accepted, that each warrantless arrest was made without the requisite individual evaluation of flight risk. *Id*. Since the filing of the Complaint, however, the government has issued guidance on the requirement for reasonable suspicion for traffic stops, on assessing flight risk, and on documenting the facts and circumstances surrounding a warrantless arrest as soon as practicable. Defendants' Brief at pp. 28-29. The government has also taken steps to ensure that all Border Patrol agents in the El Centro Sector receive training on legal requirements for conducting vehicle stops, consensual encounters, and warrantless arrests. *Id.* at 31-32.

Under these circumstances, Plaintiffs cannot show that they are likely to be stopped again by the Border Patrol in violation of law, and the district court erred by crediting those allegations. *E.g.*, Order, ER at 74, 77. The Ninth Circuit has held that, where, as here, Plaintiffs have only been stopped by the Border Patrol on one occasion, the likelihood that Plaintiffs will again be stopped by the Border Patrol is

5

"too speculative to warrant an equitable judicial remedy, including declaratory relief, that would require … that the Border Patrol change its practices." *Hodgers-Durgin*, 199 F.3d at 1037 (en banc).

The likelihood of Plaintiffs being unlawfully stopped or arrested again by the Border Patrol is even more speculative than in *Hodgers-Durgin*, because Defendants have voluntarily issued new guidance and undertaken steps to train Border Patrol agents regarding the legal requirements for traffic stops, consensual encounters, and warrantless arrests. The district court erred in determining that, in the face of intervening training, Plaintiffs' slight, anecdotal evidence established "a pattern and practice" such that an injunction was justified. Order, ER at 77. This is not a case where the Defendants approached *lawfully admitted* aliens in their homes and other *nonpublic* places without reasonable suspicion and questioned them about their status. ER at 77; *cf. Zepeda v. United States Immigration & Naturalization Service*, 753 F.2d 719, 722-23 (9th Cir. 1983) (upholding in part an injunction restraining the government from approaching homes and nonpublic areas of business absent reasonable suspicion). Under the circumstances here, the district court plainly erred when it concluded that Plaintiffs established the requisite risk of future harm to qualify for injunctive relief.

In sum, the district court erred by concluding that Plaintiffs' alleged past harm was sufficient to establish standing. Since Plaintiffs' have not shown a

6

sufficient likelihood of future injury, the Court should vacate the district court's injunction.

**II. The district court's order will have the effect of improperly chilling Defendants' lawful immigration enforcement activities**

The district court, as part of its order, required the government to

- Refrain from conducting detentive stops unless the agent "documents the fact and circumstances surrounding the stop in narrative form" and which narrative must include very specific facts;

- Refrain from conducting warrantless arrests unless the agent "document[s] in writing 'the facts and circumstances surrounding the warrantless arrest'" and which report must include very precise language;

- Refrain from conducting detentive stops and warrantless arrests until all specified agents "have been trained" with the training materials served on Plaintiffs' counsel; and

- Release to Plaintiffs' counsel "the documentation describing Border Patrol's detentive stops and warrantless arrests within this District, or if requested by Plaintiffs' counsel concerning specific individual detentive stops or warrantless arrests, no later than seven days after the request."

ER at 86-88.

Neither the Plaintiffs nor the district court point to any legal basis for these reporting requirements. As established above, the absence of a likelihood of future

7

injury to the named Plaintiffs is fatal to the district court's order. But even if the granted injunctive relief had been available, the reporting requirements have no basis in law.

In the Supreme Court's recent decision in *Noem v. Perdomo*, 2025 U.S. LEXIS 2779 (2025), Justice Kavanaugh warned courts against overruling "the *Brignoni-Ponce* line of cases with respect to immigration stops based on reasonable suspicion" and against "after-the-fact judicial second guessing" in ways that "will inevitably chill lawful immigration enforcement efforts." 2025 U.S. LEXIS 2779 at *8, 9 (Kavanaugh, J., concurring). By adding significant reporting requirements when officers interact with suspected illegal aliens, the district court's order both improperly adds criteria to officers' judgment to those set forth in *Brignoni-Ponce* and its progeny and has the effect of chilling lawful immigration law enforcement efforts. *See*, *e.g.*, Defendants' Brief at pp. 39-41.

The Supreme Court has recognized that enjoining the activities of a government agency risks running afoul of separation of powers principles:

> When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. When transported into the Art. III context, that principle, grounded as it is in the idea of separation of powers, counsels against recognizing standing in a case brought, not to enforce specific legal obligations whose violation works a direct harm, but to seek a restructuring of the

8

> apparatus established by the Executive Branch to fulfill its legal duties. The Constitution, after all, assigns to the Executive Branch, and not to the Judicial Branch, the duty to take Care that the Laws be faithfully executed.

*Allen v. Wright*, 468 U.S. 737, 761 (1984) (internal quotations omitted); *see also Hodgers-Durgin*, 199 F.3d at 1044 ("In the absence of a likelihood of injury to the named plaintiffs, there is no basis for granting injunctive relief that would restructure the operations of the Border Patrol and that would require ongoing judicial supervision of an agency normally, and properly, overseen by the executive branch.").

The district court's order restructures the constitutional order and chills enforcement of federal immigration law, thus interfering with the Executive Branch's responsibility to take care that the laws be faithfully executed. Thus, the order improperly supervises the Defendants' activities, and is even more unjustified because it gives a supervisory role not only to the court, but to Plaintiffs' counsel.

## CONCLUSION

For the foregoing reasons, this Court should reverse and vacate the district court's injunction.

DATED: October 3, 2025　　　　Respectfully submitted,

　　　　　　　　　　　　　　/s/ Jonathon P. Hauenschild
　　　　　　　　　　　　　　JONATHON P. HAUENSCHILD
　　　　　　　　　　　　　　MATT A. CRAPO
　　　　　　　　　　　　　　Federation for American Immigration Reform
　　　　　　　　　　　　　　25 Massachusetts Ave., NW, Suite 330
　　　　　　　　　　　　　　Washington, DC 20001
　　　　　　　　　　　　　　Telephone: (202) 328-7004
　　　　　　　　　　　　　　jhauenschild@fairus.org
　　　　　　　　　　　　　　mcrapo@fairus.org

　　　　　　　　　　　　　　Counsel for *Amicus Curiae*
　　　　　　　　　　　　　　Federation for American Immigration Reform

## CERTIFICATE OF COMPLIANCE

1.  The foregoing brief complies with the type-volume limitation of Fed. Fed. R. App. P. 29(a)(5) because:

This brief contains 2,006 words, including footnotes, but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: October 3, 2025                    Respectfully submitted,

                                          /s/ Jonathon P. Hauenschild

**CERTIFICATE OF SERVICE**

I certify that on October 3, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. All parties were served electronically through the ACMS system.

/s/ Jonathon P. Hauenschild